CINCINNATI BAR ASSN. *v.* DEATON.

[Cite as *Cincinnati Bar Assn. v. Deaton,*
102 Ohio St.3d 19, 2004-Ohio-1587.]

(No. 2003–1534—Submitted December 2, 2003—Decided April 14, 2004.)

---

**Per Curiam.**

{¶ 1} Respondent, John Reno Deaton II, last known address in Ft. Thomas, Kentucky, Attorney Registration No. 0066990, was admitted to the Ohio bar in 1996. On September 25, 2002, relator, Cincinnati Bar Association, filed a complaint, as amended, charging respondent with numerous violations of the Code of Professional Responsibility. After efforts to serve respondent by certified mail failed, the complaint was served on the Clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B). Respondent did not answer, and relator moved for default. See Gov.Bar R. V(6)(F).

{¶ 2} A master commissioner appointed by the Board of Commissioners on Grievances and Discipline considered the motion for default, making findings of fact, conclusions of law, and a recommendation. Evidence submitted for review established that respondent agreed to represent at least 11 different clients, including the law firm for which he worked at the time, but failed to perform as promised and routinely lied to clients about his progress in their cases.

{¶ 3} Respondent took the first client's case, a small claims action to recover payment for services, in April 2000 on an hourly basis. He told the client that he had filed suit on the client's behalf and that a trial date had been set. Neither representation was true. He also misrepresented twice that the fictitious trial date had been rescheduled.

{¶ 4} Respondent met with the client on the day before the second purported trial date, at which time the client said that he would accept $2,000 to $2,200 to settle the case. The next morning, two hours before the "trial," respondent called to tell the client that he had received a $2,800 settlement offer. The client accepted the offer, and respondent represented that he would place the money in escrow, prepare a final settlement agreement, and deduct his fees. Weeks passed during which respondent did not return the client's calls, and the client received an invoice from respondent's law firm for services. The client asked the law firm's office manager about the invoice, and the next day, respondent appeared unexpectedly at the client's job site and paid the client $2,000, withholding $800 as his fee. Respondent paid the client with a personal check, thereby concealing the transaction from his employer.

{¶ 5} Relator charged that in representing this client, respondent had violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 2–106(A) (charging a clearly excessive fee); 6–101(A)(3) (neglecting an entrusted legal matter); 7–101(A)(1) (failing to seek client's lawful objectives through reasonable means), (2) (failing to carry out a contract for professional services), and (3) (causing client damage or prejudice); and 7–102(A)(5) (knowingly making a false statement of law or fact).[1]

{¶ 6} A second client retained respondent to petition for a change in the custody of his two minor children. On October 23, 2000, respondent represented to a child support enforcement agency and to his client that he had filed the petition in court. He had not. When he did file the petition on November 9, 2000, the petition erroneously indicated that the client's wife had been served with the pleading the preceding month. Respondent later misrepresented to the client and the client's mortgage company that the client, who was given temporary custody of one child, had been given full custody and was no longer required to pay child support. As a result, the client unwittingly failed to keep up with the child support that he was required to pay during this period. Relator charged that respondent had thereby violated DR 1–102(A)(4); 6–101(A)(3); 7–101(A)(1), (2), and (3); and 7–102(A)(5).

{¶ 7} Respondent was also assigned to represent his employer, the third client, as lead counsel in a contract action. Respondent advised one of his law firm's

---

1. This rule was miscited in the complaint as DR 7–101(A)(5).

partners that he had prepared and filed a motion to dismiss a counterclaim as barred by the statute of frauds; however, he never filed the motion. Respondent also failed to answer the counterclaim, causing the defendant to move for a default judgment.

{¶ 8} Respondent concealed his failure by not reporting his attendance at the hearing on the motion for default on law firm records to document his activity. The court denied the default motion, but, unknown to his employer, respondent had also failed to reply to a request for admissions. The court accepted the admissions as true and, as a result, granted partial summary judgment against the law firm. Relator charged that respondent had thereby violated DR 1–102(A)(4); 6–101(A)(3); 7–101(A)(1), (2), and (3); and 7–102(A)(5).

{¶ 9} A fourth client retained respondent to represent her in a personal-injury action. In December 2000, a partner in respondent's law firm learned that respondent had failed to file timely notice of the client's experts. Summary judgment was later granted against the client for unrelated reasons.

{¶ 10} The client asked respondent to appeal the judgment against her. In June 2001, respondent advised a law firm partner that the appeal had been filed. As proof, he gave the partner a copy of his appellate brief that included a certificate of service but did not bear a time-stamp from the court. When respondent's neglect began to surface, the partner investigated and learned that respondent had never filed the appellate brief in court or served notice of the brief as represented. Relator charged that respondent had thereby violated DR 1–102(A)(4); 6–101(A)(3); 7–101(A)(1), (2), and (3); and 7–102(A)(5).

{¶ 11} A fifth client retained respondent to represent her in another personal-injury action. Respondent represented to the client and his co-counsel that he had found an expert favorable to the client's case. He also told his co-counsel that he had advanced $1,200 to the expert and obtained a report from the expert. However, respondent never complied with his co-counsel's repeated requests for a copy of the report, and his co-counsel and client later learned that he had never located the expert, paid costs, or obtained the report as represented. Relator charged that respondent had thereby violated DR 1–102(A)(4); 6–101(A)(3); 7–101(A)(1), (2), and (3); and 7–102(A)(5).

{¶ 12} The sixth client consulted respondent concerning a claim of employment discrimination and an April 2000 incident of assault. Respondent agreed to file a complaint in at least one of the matters, and the client called respondent to make sure that he did so. Respondent's time sheet entries purport to show that he prepared the anticipated pleading well in advance of the filing deadline; however, he did not file the complaint, nor does it appear that he even prepared it. He also stopped returning the client's calls after missing the filing deadline. Relator

charged that respondent had thereby violated DR 6–101(A)(3); 7–101(A)(1), (2), and (3); and 7–102(A)(5).

{¶ 13} A seventh client retained respondent in the fall of 2000 to petition for guardianship of the client's elderly aunt. Respondent arranged for the client's appointment as guardian but thereafter failed to file timely inventories and accountings in the guardianship. When the client's aunt and ward died on January 22, 2001, respondent agreed to oversee the administration of her estate but failed to return the client's calls over the next several months.

{¶ 14} On June 18, 2001, a second aunt told the client that respondent had advised her of a hearing to close the deceased aunt's estate that was scheduled for June 20, 2001. Respondent told both the client and this aunt that they did not need to attend the hearing; however, both went to the courthouse. When the client and his aunt found respondent, he told them he was going to file some papers and asked them to wait in the lobby for his return.

{¶ 15} Respondent did not return to the courthouse lobby. Upon inquiring of a magistrate, the client and his aunt learned that respondent had just filed the guardian's inventory that should have been filed five months earlier, 90 days after the client's appointment. Respondent never communicated with his client after this incident. Moreover, despite what he had represented to his client, respondent had never opened the deceased aunt's estate. Relator charged that respondent had thereby violated DR 1–102(A)(4); 6–101(A)(3); 7–101(A)(1), (2), and (3); and 7–102(A)(5).

{¶ 16} The eighth client retained respondent to defend him against a charge of driving under the influence. Respondent failed to return the client's calls about his case until after the client reported him to a senior partner of the law firm. And although respondent told the client that he would file a motion to suppress, he never did.

{¶ 17} In the course of his representation, respondent's client missed a hearing, arriving too late and after respondent had left the courthouse. The client tried to contact respondent without success, and respondent never told the client that his failure to appear had resulted in a warrant for his arrest. A few days after the hearing, police went to the client's home and his 11–year–old daughter telephoned him, frightened, to alert him about the situation. The client promptly appeared as instructed and was permitted to post bond.

{¶ 18} At a second scheduled trial date, respondent recommended that the client plead guilty to the charges against him because certain witnesses had either not been subpoenaed or had not appeared, and the court would not grant further continuances in the case. The client pled guilty, and respondent promised to appeal. After his plea, the client called respondent unsuccessfully many times to ask about the appeal. The client ultimately learned from a partner in

respondent's law firm that the appeal time had elapsed and, further, that his guilty plea had precluded an appeal. Relator charged that respondent had thereby violated DR 1–102(A)(4); 6–101(A)(3); 7–101(A)(1), (2), and (3); and 7–102(A)(5).

{¶ 19} A ninth client retained respondent in December 2001 to represent him in an action to clear for sale the title of property held in trust. On four or five occasions, respondent represented to his client that the action had been filed in probate court but that he needed the client to sign additional papers that he intended to file. Respondent then scheduled a "dry closing" on the property for March 29, 2000, assuring the client that all issues of title had been resolved. The client later learned that respondent had not filed the action to clear title and, consequently, the property could not be transferred. Relator charged that respondent had thereby violated DR 1–102(A)(4); 6–101(A)(3); 7–101(A)(1), (2), and (3); and 7–102(A)(5).

{¶ 20} The tenth client retained respondent in October 2001 to represent her in a divorce action. By that time, the law firm for which respondent had worked had terminated his employment, and respondent was practicing on his own. The client paid respondent a flat fee of $350. Respondent later joined another law firm, and that firm sent invoices for his services to his divorce client. Respondent told the client to ignore the invoices and then stopped communicating with her. The client ultimately learned that respondent never filed anything on her behalf. He refunded the client's money only after her repeated requests. Relator charged that respondent had thereby violated DR 1–102(A)(4); 6–101(A)(3); 7–101(A)(1), (2), and (3); 7–102(A)(5); and 9–102(B)(4) (failing to promptly pay client funds to which the client is entitled).

{¶ 21} An eleventh client retained respondent to defend him against charges of driving under the influence. On the day of the client's first hearing, respondent told the client and his family that although the arresting officer was willing to agree to a reduction of the charges against the client, the prosecutor was not. Respondent, who did not suggest any pretrial motions or continuances, advised his client to plead guilty or no contest.

{¶ 22} The client pled no contest and, before sentencing, gave respondent some medical evidence for the court's consideration. Respondent did not use it. The client retained new counsel, and the court granted the new attorney's motion to withdraw the client's plea. Thereafter, the charges against the client were reduced to the offense that the prosecutor had supposedly rejected before. Relator charged that respondent had thereby violated DR 6–101(A)(3); 7–101(A)(1), (2), and (3); and 7–102(A)(5).

{¶ 23} Finally, relator further charged that respondent violated Gov.Bar R. V(4)(G) (failure to cooperate in disciplinary proceedings) because he did not

respond to investigative inquiries concerning his eighth, ninth, tenth, and eleventh client, or to a grievance submitted by a twelfth client.

{¶ 24} Except for the violation of DR 9–102(B)(4) relative to the first client, whom the master commissioner found had not actually realized any settlement proceeds for respondent to wrongfully withhold, the master commissioner found that respondent committed all of the cited misconduct.[2] In recommending a sanction for this misconduct, the master commissioner found none of the mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. As aggravating considerations, the master commissioner found:

{¶ 25} "Respondent lied to nearly everyone he came in contact with, with respect to the charges raised by the Relator. Respondent misled and lied to clients and further compounded the situation [by] falsifying and fabricating time sheets and records of the law firm where he was employed. As a result of these multiple deceptions, clients were damaged, the law firm was exposed to serious credibility and financial problems, and the justice system was denigrated and manipulated.

{¶ 26} "The Master Commissioner notes the respondent has made no effort to explain or deny the accusations made by Relator. It is further noted that the Respondent committed a number of serious violations of the Disciplinary Rules in a relatively short period of time. The conduct of the Respondent is a basic default of his oath. Respondent may have had some motive for his conduct[;] however[,] the reasons for the constant abdication of responsibility to those to whom he owed a duty [are] reprehensible."

{¶ 27} Relator suggested that respondent's license to practice law be indefinitely suspended. Finding respondent predisposed to dishonesty and lacking in integrity, the master commissioner recommended a permanent disbarment. The board adopted the master commissioner's findings and recommendation.

{¶ 28} We find that respondent violated Gov.Bar R. V(4)(G) and DR 1–102(A)(4); 2–106(A); 6–101(A)(3); 7–101(A)(1), (2), and (3); 7–102(A)(5); and 9–102(B)(4) as charged in the complaint. Moreover, despite his efforts to present mitigating evidence for the first time in objections to the board's report, we agree that respondent must be disbarred.

{¶ 29} Respondent submits that his transgressions were related to, if not caused by, his relationship with his former fiancée and her propensity to abuse

---

2. The master commissioner found an eleventh violation of DR 1–102(A)(4) that was not charged in the complaint. We reject this finding, as well as the board's reliance on it, pursuant to our independent review and final authority in disciplinary cases. *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 708 N.E.2d 193, paragraph one of the syllabus.

alcohol and other substances. He claims that he was unable to attend to his clients because he sometimes had to search for his fiancée when she disappeared in a drunken or drug-induced binge and because she was sometimes verbally or physically abusive toward him. Relator responds that respondent's submissions are untimely, unwarranted, and insufficient to diminish the gravity of his misconduct. We agree, at least insofar as the insufficiency of his mitigating evidence.

{¶ 30} " 'Neglect of legal matters and a failure to cooperate in the ensuing disciplinary investigation generally warrant an indefinite suspension from the practice of law in Ohio.' " *Columbus Bar Assn. v. Moushey*, 96 Ohio St.3d 461, 2002-Ohio-4850, 776 N.E.2d 16, ¶ 11, quoting *Akron Bar Assn. v. Snyder* (1999), 87 Ohio St.3d 211, 212, 718 N.E.2d 1271. But an indefinite suspension is too lenient here because respondent also deliberately concealed his neglect to protect his personal interests, thereby sacrificing his clients' welfare to preserve his own. We view his actions as the equivalent of misappropriating funds from these clients, an offense that, absent sufficiently mitigating circumstances, requires our most severe sanction. *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816; *Disciplinary Counsel v. Connors*, 97 Ohio St.3d 479, 2002-Ohio-6722, 780 N.E.2d 567.

{¶ 31} Although respondent has no prior disciplinary record, he has not offered evidence of this or any other mitigating factor described in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. He suggests that he has suffered abuse but does not claim or substantiate that it produced a medical condition that caused his misconduct. He also presents nothing to suggest his good-faith restitution or his character and reputation. Moreover, he clearly did not cooperate during relator's investigation, and his misconduct was obviously motivated by self-interest.

{¶ 32} For these reasons, we adopt the recommendation to disbar. Respondent is therefore ordered permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

_____

Laura A. Abrams and Franklin A. Klaine Jr., for relator.
John Reno Deaton, pro se.