CINCINNATI BAR ASSOCIATION *v.* ROTHERMEL.

[Cite as *Cincinnati Bar Assn. v. Rothermel,*
112 Ohio St.3d 443, 2007-Ohio-258.]

(No. 2006–1639—Submitted November 15, 2006—Decided February 7, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Christian Dean Rothermel of Hamilton, Ohio, Attorney Registration No. 0043140, was admitted to the practice of law in Ohio in 1977.

{¶ 2} On December 31, 1984, we suspended respondent from practice for one year for professional misconduct involving conversion of client trust funds, failure to disburse funds held on a client's behalf, and failure to maintain the identity of client funds in a trust account. See *Disciplinary Counsel v. Rothermel* (1984), 15 Ohio St.3d 121, 15 OBR 272, 472 N.E.2d 1072. Respondent was eventually reinstated. See *Disciplinary Counsel v. Rothermel* (1999), 86 Ohio St.3d 1215, 716 N.E.2d 712. On December 15, 2004, we suspended respondent's license to practice again, this time for an indefinite period, for his failure to maintain the identity of client funds, his failure to keep complete records of client property in his possession, and his acts of fraud, deceit, dishonesty, or misrepresentation. See *Cincinnati Bar Assn. v. Rothermel,* 104 Ohio St.3d 413, 2004-Ohio-6559, 819 N.E.2d 1099.

{¶ 3} On October 10, 2005, relator, Cincinnati Bar Association, charged respondent with additional counts of professional misconduct. Respondent was served the complaint but did not answer, and relator moved for default pursuant to Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of misconduct and a recommendation, which the board adopted.

### Misconduct

{¶ 4} The complaint charged respondent with three counts of misconduct, the third of which was recommended for dismissal because it was not supported by the sworn or certified documentary prima facie evidence required by Gov.Bar R. V(6)(F)(1)(b). On review, we adopt the recommendation to dismiss. Accord

*Toledo Bar Assn. v. Dewey,* 98 Ohio St.3d 418, 2003-Ohio-1495, 786 N.E.2d 453, ¶ 2.

## Count I

{¶ 5} Bradley Abrams retained respondent to sue a business associate sometime after June 10, 2000, the day on which Abrams was involved in an accident and suffered a traumatic brain injury. The injury left Abrams with permanent brain damage resulting in memory loss and periods of extreme agitation. Abrams paid respondent $5,000 in September 2001.

{¶ 6} On February 24, 2004, while still representing Abrams, respondent convinced his client to lend him $15,000, ostensibly to finance the expansion of his law practice. The note for the loan required payment of the entire debt on August 24, 2004. Respondent offered no collateral to secure the loan, and he did not repay the loan as promised. According to the March 8, 2006 affidavit of Abrams's mother, respondent has made only three payments, totaling $2,400, on the debt.

{¶ 7} Abrams's case against his business associate was tried, apparently by respondent, before a magistrate on December 6, 2004. Respondent's license to practice law was indefinitely suspended on December 15, 2004, and the magistrate ruled against Abrams on January 25, 2005. Despite the continuing status of their professional relationship, including the possibility of an appeal, respondent failed to notify Abrams of his suspension as ordered by this court.

## Count II

{¶ 8} Despite his indefinite suspension on December 15, 2004, respondent also ignored this court's order by continuing to represent clients before the United States Bankruptcy Court for the Southern District of Ohio. On January 5, 2005, according to the federal court's operations and personnel manager, respondent filed plans for Chapter 13 relief in that court on behalf of two clients. On January 11, 2005, for yet a third Chapter 13 client, respondent filed a motion to reinstate a case that had been dismissed.

{¶ 9} By improperly borrowing money from Abrams and never fully repaying the loan, as alleged in Count I of the complaint, respondent violated DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation) and 5–104(A) (prohibiting a lawyer from entering a business transaction with a client if the lawyer and client have differing interests unless the client has given informed consent). We also agree with the board that respondent violated Gov.Bar R. V(6)(A)(1) by failing to notify Abrams of his indefinite suspension in accordance with our order. The board, relying on the master commissioner's report, further found respondent in violation of two related prohibitions—DR 1–

102(A)(5) (prohibiting conduct prejudicial to the administration of justice) and 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice); however, we do not find these violations, because they were not charged in relator's complaint. Accord *Cincinnati Bar Assn. v. Deaton*, 102 Ohio St.3d 19, 2004-Ohio-1587, 806 N.E.2d 503, ¶ 24, fn. 2.

{¶ 10} As to Count II, we agree with the board that respondent's continued representation in bankruptcy court violated DR 3–101(B) (prohibiting a lawyer from practicing in violation of jurisdictional regulations) and Gov.Bar R. V(6)(A)(1). We do not, however, adopt the board's findings that respondent violated DR 1–102(A)(6) and Gov.Bar R. V(8)(E), again because these violations were not charged against respondent. *Deaton*, supra.

## Sanction

{¶ 11} When imposing a sanction for attorney misconduct, "we consider the duties violated, the actual or potential injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases." *Stark Cty. Bar Assn. v. Ake*, 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, ¶ 44. We have already identified the professional duties respondent violated, and his mental state is not in dispute. Moreover, the injury to his clients and the judicial system is obvious—respondent acted in his own interest, and to Abrams's detriment, in taking his client's money, and also disregarded a court order that had been issued for the public's protection.

{¶ 12} Thus, all that is left is to weigh the aggravating and mitigating features of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 13} As the board found, the record contains no mitigation evidence that weighs in favor of leniency. In aggravation, we agree that respondent has a significant history of prior misconduct, has committed multiple offenses, has engaged in a pattern of misconduct, and has failed to participate in the disciplinary process. BCGD Proc.Reg. 10(B)(1)(a), (c), (d), and (e). Weighing these factors in combination with his misconduct, relator, the master commissioner, and the board all recommended that respondent be permanently disbarred.

{¶ 14} We have repeatedly disbarred attorneys for practicing law while under suspension. See *Disciplinary Counsel v. Henderson*, 108 Ohio St.3d 447, 2006-Ohio-1336, 844 N.E.2d 348; *Disciplinary Counsel v. Jefferson* (1998), 83 Ohio St.3d 317, 699 N.E.2d 930; *Disciplinary Counsel v. Caywood* (1996), 74 Ohio St.3d 596, 660 N.E.2d 1148. Absent any mitigating circumstances, the penalty for ignoring orders of the court and continuing to practice law while under

suspension is disbarment. Disbarment is warranted, and we accept the recommendation to disbar.

{¶ 15} Respondent is therefore permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

CUPP, J., not participating.

———

Christopher R. Heekin and James K. Rice, for relator.