CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* AXNER.

[Cite as *Cleveland Metro. Bar Assn. v. Axner,* 135 Ohio St.3d 241,

2013-Ohio-400.]

*Attorney misconduct—Multiple disciplinary violations—Improper employment of*
*suspended attorney—Indefinite suspension.*

(No. 2012-1340—Submitted January 9, 2013—Decided February 14, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 11-036.

_____

**Per Curiam**.

{¶ 1} Respondent, Gary Ray Axner of Cleveland, Ohio, Attorney Registration No. 0018278, was admitted to the practice of law in Ohio in 1971. In a five-count amended complaint filed in October 2011, relator, Cleveland Metropolitan Bar Association, charged Axner with professional misconduct arising from his alleged neglect of five separate client matters, his failure to reasonably communicate with some of those clients, his employment of a suspended attorney for approximately 13 years, and his initial failure to cooperate in two of the resulting disciplinary investigations.[1]

{¶ 2} The parties submitted several stipulations of fact and misconduct, 57 exhibits, and ten witnesses, including Axner. The panel of the Board of Commissioners on Grievances and Discipline found that relator had proven many of its alleged violations by clear and convincing evidence but, citing the

---

1. Although some of Axner's alleged acts of misconduct occurred before the February 1, 2007 effective date of the Rules of Professional Conduct, relator has not alleged any violations of the Disciplinary Rules of the Code of Professional Responsibility, which governed attorney misconduct that occurred before that date.

insufficiency of the evidence, recommended that Count One and certain violations alleged in Count Two be dismissed. Having considered its findings of misconduct, the applicable aggravating and mitigating factors, and the sanctions imposed for comparable misconduct, the panel recommended that Axner be indefinitely suspended from the practice of law. The board adopted the panel's findings of fact and its recommended sanction. We are persuaded to accept the recommendation of the board. Accordingly, we indefinitely suspend Axner.

## Misconduct

### Count One—The Calvey Matter

{¶ 3} The first count of relator's complaint relates to Axner's agreement to handle a personal bankruptcy for Patricia and Timothy Calvey. It alleged that Axner neglected the couple's legal matter by failing to file a bankruptcy petition during his nearly 18 months of representation, failing to reasonably communicate with the couple, and charging an unreasonable and clearly excessive fee by retaining $500 of their $1,399 retainer for services rendered upon the termination of his representation.

{¶ 4} Having considered the parties' stipulations and the testimony regarding this count, the board found that the Calveys' bankruptcy was less than simple due to unforeseen complications, including an automobile accident and a resulting personal-injury claim that the couple did not initially disclose to Axner. And while the board noted that there was room to criticize Axner for his inattentiveness and his communication style, the board could not say with firm conviction that Axner demonstrated an unreasonable lack of diligence. Moreover, the board was not convinced that the portion of the retainer that Axner kept was unreasonable in light of the indisputable preparatory work that he had performed on the Calveys' case. Therefore, we adopt the board's recommendation and dismiss Count One in its entirety.

**Count Two—The Norman Matter**

**{¶ 5}** Phyllis Norman retained Axner in November 2007 to file a bankruptcy petition on her behalf and paid installments totaling $1,000 for Axner's fee and an additional $399 for costs. The parties stipulate that Axner ignored Norman's telephone calls and messages from the time he was retained until July 2010—more than two and a half years. In order to speak to Axner, Norman would go to his office during his Saturday office hours without an appointment and wait to see him. At those meetings, Axner assured Norman that he would file her bankruptcy petition "next week," yet nothing happened. Norman testified that Axner's failures caused her a lot of stress and, when she grew tired of waiting, she filed a grievance with relator. Upset that she had contacted relator, Axner finally called her back and soon filed her bankruptcy petition. She finally received her bankruptcy discharge in January 2011—more than three years after she retained Axner. The parties stipulate that the delays in Norman's case were due to Axner's neglect or lack of diligence.

**{¶ 6}** Based on these facts, the board found that Axner had violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). But, stating that there was insufficient evidence to establish that discrepancies between the fees Axner had received from Norman and the amount that he reported to the bankruptcy court resulted from misrepresentation, the board recommends that we dismiss alleged violations of Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal) and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We adopt the board's findings of fact

and misconduct with respect to this count and hereby dismiss the alleged violations of Prof.Cond.R. 3.3(a)(1) and 8.4(d).

### Count Three—Failure to Cooperate

{¶ 7} The board found that Axner had violated Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation) and Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) by failing to respond to relator's letter of inquiry regarding the Calvey and Norman grievances and failing to comply with a subpoena for his deposition and the production of documents. The board also noted that Axner was not candid either about his reasons for his absence, stating that he had to attend his aunt's funeral (which occurred several days after the scheduled deposition), or about his intention to retain certain counsel. We adopt the board's findings of fact and misconduct with respect to this count.

### Count Four—The Carroll Matter

{¶ 8} The parties stipulate and the board found that on May 2, 2009, Clinton and Wendy Carroll retained Axner to represent them in a Chapter 7 bankruptcy proceeding. By early September 2009, they had paid him a total of $1,399, but he did not file their bankruptcy petition until mid-October 2010. The bankruptcy court ordered Axner to disgorge $200 of his fee to the Carrolls after he failed to attend a meeting of creditors. Axner subsequently converted the bankruptcy to a Chapter 13 proceeding, but the first meeting of creditors had to be rescheduled because he arrived late and inebriated. Throughout these delays, Axner was not responsive to the Carrolls' communications. They missed work to attend the creditor meetings that Axner missed and had to repeat their credit-counseling course due to his delays.

{¶ 9} The parties stipulated that Axner's conduct violated Prof.Cond.R. 1.3. The board adopted that stipulation and also found that his conduct violated

4

Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation), 8.4(d), and 8.4(h) as charged in the complaint. We adopt these findings of fact and misconduct.

### Count Five—Employment of a Suspended Attorney

{¶ 10} The parties stipulate that Axner employed suspended attorney Howard Schuman for about 13 years following his 1998 suspension.[2] While Axner and Schuman initially attended meetings at clients' homes together, Axner eventually allowed Schuman to meet alone with clients. He generally split his fees evenly with Schuman and never registered this employment relationship with the Office of Disciplinary Counsel as required by Gov.Bar R. V(8)(G) (requiring an attorney or law firm seeking to enter into an employment, contractual, or consulting relationship with a suspended attorney to register that relationship with the Office of Disciplinary Counsel).

{¶ 11} Axner violated an administrative order of the bankruptcy court by failing to meet with his clients Traci Robinson and Barbara Wojciechowski before the meetings of creditors in their cases. Instead, he relied upon Schuman to meet with these clients and collect Robinson's fees. He failed to attend the meeting of creditors in both cases and, with respect to the Wojciechowski matter, failed to file required documents, failed to keep the client reasonably informed of the status of her case, failed to respond to the client's requests for information, and failed to

---

2. Although we suspended Schuman for one year, we placed certain conditions on his reinstatement to the practice of law, and to date, he has not applied for reinstatement. *Cleveland Bar Assn. v. Schuman*, 81 Ohio St.3d 185, 690 N.E.2d 1 (1998). Moreover, in 2005, we imposed an attorney-registration suspension against Schuman. *In re Attorney Registration Suspension of Schuman*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671.

explain matters sufficiently to allow the client to make informed decisions. Additionally, the parties stipulated that on April 14, 2011, Axner was drinking before court and appeared drunk before federal Bankruptcy Judge Randolph Baxter.

**{¶ 12}** With respect to this count, the parties stipulated and the board found that Axner had violated Prof.Cond.R. 1.3, 1.4(a)(2), 1.4(b), 5.4(a) (prohibiting a lawyer or law firm from sharing legal fees with a nonlawyer, except in certain enumerated circumstances not applicable here), and 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction or assisting another in doing so) and Gov.Bar R. V(8)(G)(3). The board also found that Axner's conduct with respect to Robinson and Wojciechowski violated Prof.Cond.R. 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 8.4(c), 8.4(d), and 8.4(h). We adopt these findings of fact and misconduct.

### Sanction

**{¶ 13}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 14}** As aggravating factors, the parties stipulated and the board found that Axner has engaged in a pattern of misconduct involving multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(c) and (d). The board also found that Axner had acted with a selfish motive and took advantage of vulnerable clients. *See* BCGD Proc.Reg. 10(B)(1)(b) and (h).

{¶ 15} As mitigating factors, the parties stipulated that Axner does not have a prior disciplinary record, has fully and freely cooperated in the disciplinary proceeding since obtaining counsel, and has been diagnosed with a chemical dependency for which he has completed an intensive outpatient program. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), and (g). The board, however, noted that Axner initially failed to cooperate in relator's disciplinary investigation, that Axner's attendance at Alcoholics Anonymous ("AA") meetings continued to drop, and that when asked whether Axner was currently able to practice law competently and ethically, his counselor replied, "I believe he's currently working a good recovery program." And although the board acknowledged that some of Axner's misconduct could be attributed to his alcoholism, it found that there was no evidence that his alcoholism was at the root of his 13-year de facto partnership with Schuman. Therefore, the board found that the only mitigating factor present was the absence of a prior disciplinary record.

{¶ 16} In his closing brief following the panel hearing, Axner argued that the appropriate sanction for his misconduct was a suspension of an unspecified duration, fully stayed on the conditions that he serve a period of monitored probation and regularly attend AA. In contrast, citing *Columbus Bar Assn. v. Van Sickle*, 128 Ohio St.3d 376, 2011-Ohio-774, 944 N.E.2d 677, relator recommends that he be indefinitely suspended and that any future reinstatement be conditioned on Axner's entering into and successfully completing a contract with the Ohio Lawyers Assistance Program ("OLAP"). In *Van Sickle*, we imposed an indefinite suspension on an attorney who engaged in the practice of law while his license was under a registration suspension, neglected legal matters to the detriment of his clients, and failed initially to cooperate in the ensuing disciplinary investigations. *Id.* at ¶ 15. We also conditioned any future reinstatement on his participation in OLAP and treatment for his diagnosed depression. *Id.* at ¶ 16.

{¶ 17} In rejecting Axner's proposed sanction, the board noted that in addition to neglecting work that his clients entrusted to him, Axner "committed significant additional misconduct evincing dishonesty and a selfish motive by knowingly partnering with a suspended lawyer (Mr. Schuman) for as many as 14 years and deriving substantial profits from that illicit arrangement, by deliberately failing to report that arrangement to the Office of Disciplinary Counsel, by deliberately failing to cooperate in Relator's investigation, and by knowingly misrepresenting his reasons for that failure." He also appeared in court while drunk. Viewing these instances of misconduct in the aggregate, the board found that Axner's conduct presented an "extraordinary risk" to the public. Recognizing that we have imposed sanctions ranging from a public reprimand to permanent disbarment on attorneys who have assisted suspended or disbarred attorneys in the unauthorized practice of law, and stating that it "could find no instance of an attorney enabling ineligible persons to practice law that was more extreme, flagrant, and protracted than Respondent's," the board recommends that we indefinitely suspend Axner from the practice of law. *See, e.g.*, *Disciplinary Counsel v. Willis*, 96 Ohio St.3d 142, 2002-Ohio-3614, 772 N.E.2d 625 (publicly reprimanding an attorney who permitted a disbarred lawyer to handle client matters without supervision for more than 18 months); *Cincinnati Bar Assn. v. Fehler-Schultz*, 64 Ohio St.3d 452, 597 N.E.2d 79 (1992) (indefinitely suspending an attorney who, among other things, permitted a suspended lawyer with felony convictions for theft, forgery, and uttering to handle a full range of client matters); *Stark Cty. Bar Assn. v. George*, 45 Ohio St.2d 267, 344 N.E.2d 132 (1976) (disbarring an attorney who turned over his bankruptcy practice to his brother, who was not a lawyer).

{¶ 18} We adopt the board's findings of fact in aggravation and mitigation and agree that an indefinite suspension is the proper sanction for Axner's misconduct. Accordingly, we indefinitely suspend Gary Ray Axner from the

practice of law in Ohio. Any future reinstatement shall be conditioned on his entering into an OLAP contract, the duration of which shall be determined by OLAP, and his full compliance with that contract. Costs are taxed to Axner.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Heather M. Zirke, Assistant Bar Counsel, Andrew C. Geronimo, and Stephen D. Hobt, for relator.

Gary Ray Axner, pro se.

_____