[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Dougherty and Cicero,* **Slip Opinion No. 2019-Ohio-4418.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4418

DISCIPLINARY COUNSEL *v.* DOUGHERTY AND CICERO.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Dougherty and Cicero,* Slip Opinion No. 2019-Ohio-4418.**]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction and assisting another in doing so— Two-year suspension, with the second year stayed on conditions— Permanent disbarment.*

(No. 2018-1766—Submitted May 8, 2019—Decided October 30, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-075.

_____

**Per Curiam.**

{¶ 1} This attorney-discipline case involves two attorneys charged with either assisting or engaging in the unauthorized practice of law. The first

respondent, Timothy Raymond Dougherty, of Las Cruces, New Mexico, Attorney Registration No. 0064500, was admitted to the practice of law in Ohio in 1995. Dougherty has no prior disciplinary offenses.

{¶ 2} The second respondent, Christopher Thomas Cicero, of Columbus, Ohio, Attorney Registration No. 0039882, was admitted to the practice of law in Ohio in 1988. This is Cicero's fourth attorney-discipline case. In 1997, we suspended him for one year after he boasted that he was having a sexual relationship with a judge before whom he was appearing and told opposing counsel that the judge "would probably deny a continuance" for that reason. *Disciplinary Counsel v. Cicero*, 78 Ohio St.3d 351, 678 N.E.2d 517 (1997). In 2012, we suspended him for one year after he improperly revealed confidential information that he had received from a prospective client. *Disciplinary Counsel v. Cicero*, 134 Ohio St.3d 311, 2012-Ohio-5457, 982 N.E.2d 650. And in 2014, we indefinitely suspended him for engaging in a pattern of deceit when he lied to a judge and amended his own speeding charge to a lesser offense, without the prosecutor's authorization. *Disciplinary Counsel v. Cicero*, 143 Ohio St.3d 6, 2014-Ohio-4639, 34 N.E.3d 60. Cicero's license has been under suspension since our 2012 decision.

{¶ 3} In a January 2017 amended complaint, relator, disciplinary counsel, charged Dougherty with allowing Cicero—while he was suspended—to participate in substantive legal discussions with Dougherty's clients and prospective clients. Relator also alleged that Dougherty committed professional misconduct in one of those client matters. Less than two weeks later, relator separately charged Cicero with practicing law while under suspension. In May 2017, the Board of Professional Conduct consolidated the two cases, and in January 2018, relator amended both complaints to add new charges.

{¶ 4} After a five-day hearing before a panel of the board in May and July 2018, the board issued a report finding that Dougherty and Cicero engaged in most of the charged misconduct. The board recommends that we suspend Dougherty for

two years, with one year conditionally stayed, and permanently disbar Cicero. Only Dougherty has filed objections to the board's report and recommendation.

{¶ 5} For the reasons explained below, we overrule Dougherty's objections and adopt the board's findings of misconduct and recommended sanctions.

**The Board's Misconduct Findings against Dougherty**

*Count one: the Granata matter*

{¶ 6} In 2011, Angela Granata retained Dougherty to represent her in two civil cases and made an initial payment of $700. At the time, Dougherty did not maintain a client trust account, and he deposited those unearned fees into his personal bank account.

{¶ 7} The board found that in one of Granata's cases, Dougherty failed to timely inform her that the case lacked merit. In the second case, Dougherty negotiated a favorable settlement for Granata but failed to obtain her informed consent beforehand and failed to consider her ability to make the monthly payments required by the agreement. Eventually, Granata stopped making those payments, and a court ordered her to appear for a show-cause hearing. According to Granata, she repeatedly advised Dougherty that she was unable to make the payments and sought his assistance but he failed to help her.

{¶ 8} When Granata initially retained Dougherty, he was practicing primarily civil law—mostly in the areas of contracts and healthcare. However, in December 2012, Dougherty decided to make a career change and learn criminal law. Around that time, Dougherty met Cicero, who had a criminal-law background and was looking for an attorney to handle some of his cases during his 2012 suspension. By January 2013, Dougherty had moved into the building that had served as Cicero's law office for over 20 years.

{¶ 9} Granata testified that in March 2013, she met with both Dougherty and Cicero at Dougherty's new office, where they discussed her two civil cases and a third case in which she was represented by other counsel. According to Granata,

Dougherty introduced Cicero as his "partner." At the time, Dougherty had not yet registered his working relationship with Cicero with the Office of Disciplinary Counsel, even though at that time, Gov.Bar R. V(8)(G)(3) and (4) required an attorney seeking to enter into an employment, contractual, or consulting relationship with a suspended attorney to register the relationship with the Office of Disciplinary Counsel *before* commencing the relationship, 119 Ohio St.3d XCVII, XCVII-XCVIII.[1] Indeed, Dougherty did not register the relationship until over a year later—in June 2014.

{¶ 10} Granata testified that Dougherty and Cicero later told her that they would take over her third case and that Cicero drafted a letter terminating her other attorney's representation. Dougherty, however, failed to attend a scheduled mediation in the third case and failed to file anything on Granata's behalf. The court later entered summary judgment against her.

{¶ 11} Granata ultimately paid Dougherty a total of $6,200 for his representation in the three matters. At one point, Granata told Dougherty that she was unable to pay him any more legal fees, and she instead gave him an album recorded by The Who that included the band members' autographs. In November 2013, Granata sent Dougherty a letter requesting an accounting of all funds that she had paid him. Dougherty, however, failed to respond. In April 2014, she sent him an e-mail requesting an itemized fee statement of the legal services completed on her behalf and also the return of her album. But Dougherty again failed to respond and never sent her the requested itemized statement. In addition, Dougherty and Cicero did not return her album until a few years later, and Granata testified that an insert was missing when she finally received it.

---

1. The duty imposed on an attorney by former Gov.Bar R. V(8)(G)(3) and (4) to register with the Office of Disciplinary Counsel any employment, contractual, or consulting relationship with a disqualified or suspended attorney is identical to the duty now imposed by Gov.Bar R. V(23)(C) and (D), 140 Ohio St.3d CII, CXLI, effective January 1, 2015.

**{¶ 12}** Based on this conduct, the board found that Dougherty violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) and (4) (requiring a lawyer to keep a client reasonably informed about the status of a matter and to comply as soon as practicable with reasonable requests for information from the client), 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting a clearly excessive fee), 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.16(d) (requiring a lawyer to take steps reasonably practicable to protect a client's interests upon termination of representation, including promptly delivering papers and property to the client), 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction and from assisting another in doing so), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and former Gov.Bar R. V(8)(G).

**{¶ 13}** The board also concluded that based on his rate of $200 an hour and the amount of time it should have taken Dougherty to perform the work in Granata's legal matters, Dougherty owes Granata a $2,850 refund.

*Count two: assisting in the unauthorized practice of law*

**{¶ 14}** As noted above, Dougherty commenced his consulting relationship with Cicero in January 2013. At the time, Gov.Bar R. V(8)(G)(6) (now Gov.Bar R. V(23)(F)) required an attorney to notify a client in writing if a suspended attorney would be performing work or providing services in connection with the client's matter.[2] 119 Ohio St.3d at XCVIII. The board found that Dougherty did

---

2. The duty imposed on an attorney by former Gov.Bar R. V(8)(G)(6) to notify a client in writing if a disqualified or suspended attorney would be performing work or providing services in connection with a client matter is identical to the duty now imposed by Gov.Bar R. V(23)(F), 140 Ohio St.3d at CXLI-CXLII, effective January 1, 2015.

not prepare the required written notice until "sometime in 2014 at the earliest and perhaps as late as 2017" and that the only method Dougherty and Cicero had of distributing the notice was to leave stacks of copies throughout the office. In addition, the board noted that until 2017, Cicero's—not Dougherty's—name was on the sign outside their office building and that when Dougherty's name was finally substituted for Cicero's, the phrase "Chris Cicero Law Building" was added to the signage.

{¶ 15} In this count, relator also alleged that Dougherty assisted Cicero in the unauthorized practice of law during a meeting with a prospective client. Specifically, in 2015, Dougherty and Cicero met with Amy Sanderell and Jonas Miller to discuss a legal issue involving Sanderell. Based on Sanderell's and Miller's hearing testimony, the board found that Cicero did most of the talking at the meeting and that Cicero gave his analysis and opinion of Sanderell's issue— although neither Dougherty nor Cicero notified Sanderell in writing that Cicero was suspended. Sanderell later decided against retaining Dougherty.

{¶ 16} Based on this conduct, the board found that Dougherty violated Prof.Cond.R. 5.5(a) and Gov.Bar R. V(23)(F).

*Count three: the Ferri matter*

{¶ 17} Lindsay Ferri, now known as Lindsay Aronhalt, is a longtime acquaintance and former client of Cicero. In August 2015, police arrested Ferri for operating a motor vehicle while under the influence of alcohol ("OVI"). A few days later, Ferri met with Cicero at his office. According to Ferri, she told him the facts that had led to her arrest and in response, he indicated that the charges would be "thrown out" and quoted her a $1,800 legal fee. Ferri made an initial payment of $500, but Dougherty—who was not present for the meeting—failed to deposit those unearned fees into his client trust account. Ferri testified that Cicero did not notify her of his suspension during their meeting and that she did not meet Dougherty until the following day when he appeared for her arraignment.

6

Dougherty testified that because Ferri and Cicero were longtime acquaintances, he did not believe that it was necessary to notify her of Cicero's suspension.

{¶ 18} On November 9, 2015, police arrested Ferri for OVI again. While in the back seat of a police car, Ferri requested to speak to her attorney, whom she identified as Cicero. After answering Ferri's call—which was recorded by the police—Cicero advised her to refuse a blood test and then handed the call over to Dougherty. Ferri testified that she refused the blood test based on Cicero's advice. Ferri also testified that between November 9, 2015, and January 22, 2016, she met with Cicero several times to discuss her cases or give him payments.

{¶ 19} Based on this evidence, the board found that Dougherty violated Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), Prof.Cond.R. 5.5(a), and Gov.Bar R. V(23)(F).

*Count four: the Kasser matter*

{¶ 20} In January 2017, David Kasser met with Dougherty and Cicero to discuss Kasser's pending criminal cases. According to Kasser, he proposed a potential defense theory and although Cicero was not initially persuaded, Dougherty convinced Cicero that they should represent Kasser and pursue the theory. Kasser claimed that Cicero quoted him a $6,000 flat fee for the representation. Kasser also testified that neither Cicero nor Dougherty notified him that Cicero's license was suspended.

{¶ 21} Dougherty and Kasser signed a written "Flat Fee Agreement," and Kasser made an initial payment of $1,700 in cash, which Dougherty deposited into his operating account. But at the time, Dougherty had not yet completed any work on Kasser's cases, and their fee agreement did not designate the flat fee as "earned upon receipt," "nonrefundable," or in any similar terms. As the board has previously advised, "[a] flat fee for representation in a matter may not be placed into the attorney's business or operating account, unless it is designated as 'earned

upon receipt' or similarly and the client is advised in writing that if the lawyer does not complete the representation for any reason, the client may be entitled to a refund." Board of Professional Conduct Advisory Opinion No. 2016-1, at 4 (Feb. 12, 2016), citing Prof.Cond.R. 1.5(d)(3); *see also Columbus Bar Assn. v. McCord*, 150 Ohio St.3d 81, 2016-Ohio-3298, 79 N.E.3d 503, ¶ 7.

{¶ 22} About 11 months later, Dougherty moved to withdraw as Kasser's counsel. In his motion, Dougherty stated that he was "firing" Kasser and that Kasser intended to keep his case alive "by using any means necessary." The board found that Dougherty's motion "divulged confidential information, and potentially attorney-client privileged communications" and "cast his then client in a poor light." Kasser requested a refund, but Dougherty refused to return any of Kasser's $6,000 fee even though, as Dougherty later admitted, he had failed to complete the representation.

{¶ 23} Based on this evidence, the board found that Dougherty violated Prof.Cond.R. 1.6(a) (prohibiting a lawyer from revealing confidential client information without informed consent), 1.15(c), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 5.5(a) and Gov.Bar R. V(23)(F). In addition, the board concluded that based on the scope of work that Dougherty actually completed for Kasser, Dougherty owes Kasser a $3,200 refund.

*Count five: the Kean matter*

{¶ 24} In 2016, Nick Kean retained Dougherty to represent him in a murder case. Kean testified that throughout the representation, Cicero helped Dougherty prepare Kean's defense and that during trial, Dougherty and Cicero communicated by text message about the trial's progress. Kean also testified that Dougherty never gave him written notice of Cicero's suspension. Based on this testimony, the board found that Dougherty committed another violation of Gov.Bar R. V(23)(F).

**The Board's Misconduct Findings against Cicero**

{¶ 25} Based on the above-summarized evidence in the Granata, Sanderell, Ferri, and Kasser matters, the board found that Cicero violated Prof.Cond.R. 5.5(a) by disobeying our prior suspension orders and continuing to practice law while under suspension and Prof.Cond.R. 8.4(c) by engaging in deceitful conduct regarding the status of his license.

{¶ 26} In addition, the board found that Cicero violated former Gov.Bar R. 8(G)(1)(a) and current Gov.Bar R. V(23)(A)(1), which prohibit a suspended attorney from having "any direct client contact, other than serving as an observer in any meeting, hearing or interaction between an attorney and a client."[3] 119 Ohio St.3d at XCVII. This same prohibition was included in our 2012 and 2014 orders suspending Cicero. Although Cicero denied that he met directly with some of Dougherty's clients—or downplayed his interactions with them—the board did not believe his testimony and concluded that he "often rationalized and minimized behaviors unquestionably prohibited by the Rules of Professional Conduct, Rules for the Government of the Bar, and express orders of the Supreme Court of Ohio."

**Dougherty's Objections**

{¶ 27} Dougherty objects to most of the board's findings of misconduct and argues that he should be disciplined only for failing to maintain a client trust account. He primarily asserts that relator's witnesses lacked credibility and that the board should have accepted his and Cicero's evidence over relator's. For example, he asserts that Granata's testimony was "untruthful and unreliable," Ferri "could not get her story straight," and Kasser "lied" during his examination. Dougherty also points out that in contrast to Sanderell—who testified that Cicero had led her

---

3. Gov.Bar R. V(23)(A)(1) replaced former Gov.Bar R. V(8)(G)(1)(a), effective January 1, 2015. 140 Ohio St.3d at CXL. The board found that Cicero violated former Gov.Bar R. V(8)(G)(1)(a) by having direct client contact with Granata and violated Gov.Bar R. V(23)(A)(1) by having direct client contact in the other matters.

consultation with Dougherty and Cicero—Cicero testified that he merely took notes during that meeting. And Dougherty asserts that his time log for Granata's cases establishes that he diligently pursued her legal matters and therefore does not owe her any restitution.

**{¶ 28}** The panel recognized that relator's and respondents' witnesses gave conflicting testimony, especially on the topic of Cicero's participation in substantive legal discussions with Dougherty's clients. Although the panel determined that two of relator's witnesses were not reliable—and therefore dismissed the charges involving those witnesses—the panel generally believed relator's witnesses over Cicero and Dougherty. Specifically, the panel found that Cicero's testimony denying participation in legal discussions with clients was "not credible" and that Dougherty's memory on that subject was "lacking" and inconsistent with his prior deposition testimony. The panel similarly disregarded Dougherty's time log for Granata's cases, finding that because he created the log years after representing her and only in response to relator's inquiries, the log was not persuasive evidence of the time he had spent on her matters.

**{¶ 29}** As we have previously explained, "it is of no consequence that the board's findings of fact are in contravention of [the] respondent's or any other witness testimony. 'Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.' " *Disciplinary Counsel v. Zingarelli*, 89 Ohio St.3d 210, 217, 729 N.E.2d 1167 (2000), quoting *Cross v. Ledford*, 161 Ohio St. 469, 478, 120 N.E.2d 118 (1954). And "[u]nless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

**{¶ 30}** Here, the record does not weigh heavily against the panel's findings, and we therefore defer to the panel's determinations crediting the testimony of most

of relator's witnesses over that of Dougherty and Cicero. And considering that testimony, the record contains ample evidence to support the board's findings that Dougherty assisted Cicero in the unauthorized practice of law, engaged in the other misconduct identified in the board's report, and owes restitution to Granata and Kasser.

{¶ 31} Finally, Dougherty objects to the board's findings that he violated the rules requiring an attorney to register the employment of a suspended attorney and to notify clients in writing of that relationship. Although Dougherty admits that between January 2013 and June 2014, he neither registered his relationship with Cicero nor provided clients with written notice of Cicero's suspension, Dougherty appears to argue that because Cicero performed merely "secretarial" functions during that time period and because clients were already aware of Cicero's suspension, no rule violations occurred. But contrary to Dougherty's suggestion, there are no exceptions to the registration and notice requirements if a suspended attorney will perform merely "secretarial" functions or if the attorney believes that clients are already aware of the status of the suspended attorney's license. The record here—including Dougherty's admissions—clearly establishes that he violated former Gov.Bar R. V(G)(3) and (6) and current Gov.Bar R. V(23)(C) and (F) by failing to timely register his employment of Cicero and failing to provide written notices to clients that Cicero would be performing work on their cases.

{¶ 32} For these reasons, we overrule Dougherty's objections and adopt the board's findings of misconduct against Dougherty and Cicero.

### Dougherty's Sanction

{¶ 33} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 34}** As aggravating factors, the board determined that Dougherty had a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, caused harm to the victims of his misconduct, and failed to make restitution to Granata and Kasser. *See* Gov.Bar R. V(13)(B)(2), (3), (4), (8), and (9). The sole mitigating factor, according to the board, is Dougherty's clean disciplinary record. *See* Gov.Bar R. V(13)(C)(1).

**{¶ 35}** To determine the appropriate sanction, the board first reviewed *Cleveland Metro. Bar Assn. v. Axner*, 135 Ohio St.3d 241, 2013-Ohio-400, 985 N.E.2d 1257, in which an attorney assisted a suspended lawyer in the unauthorized practice of law for 14 years, deliberately refused to register that employment relationship, allowed the suspended attorney to meet alone with clients, and evenly split fees with the suspended attorney. In addition, Axner neglected three client matters, engaged in dishonest conduct toward clients, appeared in court inebriated, and failed to cooperate in the disciplinary investigation. Accepting the board's finding that Axner presented an "extraordinary risk" to the public, *id.* at ¶ 17, we indefinitely suspended him.

**{¶ 36}** The board here found that Dougherty's actions were not as egregious as the misconduct in *Axner*. For example, the time period of Dougherty's misconduct was not as extensive, Dougherty ultimately registered Cicero's employment, and there were no allegations of improper fee sharing, appearing in court drunk, or failing to cooperate in the disciplinary process.

**{¶ 37}** A more analogous case, the board determined, is *Disciplinary Counsel v. Talikka*, 135 Ohio St.3d 323, 2013-Ohio-1012, 986 N.E.2d 954, in which we imposed a two-year suspension, with the second year conditionally stayed, on an attorney who engaged in a wide variety of misconduct, which included neglecting client matters, failing to return unearned retainers, failing to safeguard client funds, failing to maintain records for his client trust account, failing to have clients sign closing statements in contingency-fee matters, and engaging in

dishonest conduct. Mitigating factors included the attorney's lack of prior discipline.

{¶ 38} Because Dougherty also engaged in a wide breadth of rule violations, the board concluded that a comparable sanction is warranted here. The board further recommended that because of Dougherty's "substandard" understanding of the Rules of Professional Conduct, he be required to pass the Multistate Professional Responsibility Examination ("MPRE") as a condition of reinstatement and upon reinstatement, serve a period of monitored probation focusing on the deficiencies in his practice that led to some of his misconduct.

{¶ 39} In his objections, Dougherty requests that we fully stay any suspension we impose, but he failed to cite any precedent to support such a sanction. We agree with the board that Dougherty needs time away from the practice of law to learn or relearn the Rules of Professional Conduct and to incorporate the appropriate procedures into his practice. We therefore overrule Dougherty's objection and accept the board's recommendation that he serve a two-year suspension with the second year stayed on conditions.

### Cicero's Sanction

{¶ 40} In Cicero's case, the board found no mitigating factors but did find the existence of several aggravating factors. Cicero has prior disciplinary offenses, he displayed a dishonest or selfish motive, he engaged in a pattern of misconduct, he committed multiple offenses, he refused to accept the wrongful nature of most of his conduct, and his misconduct caused harm to the public. *See* Gov.Bar R. V(13)(B)(1) through (4), (7), and (8).

{¶ 41} To support its recommended sanction, the board noted our precedent providing that "disbarment is the presumptive sanction for continuing to practice law while under suspension," *Disciplinary Counsel v. Fletcher*, 135 Ohio St.3d 404, 2013-Ohio-1510, 987 N.E.2d 678, ¶ 10; *accord Cincinnati Bar Assn. v. Rothermel*, 112 Ohio St.3d 443, 2007-Ohio-258, 860 N.E.2d 754, ¶ 14 ("Absent

any mitigating circumstances, the penalty for ignoring orders of the court and continuing to practice law while under suspension is disbarment"). The board also cited a recent decision in which we disbarred an attorney who had a significant history of discipline, disregarded his professional obligations, failed to make restitution to his clients, and presented no mitigating evidence. *See Trumbull Cty. Bar Assn. v. Large*, 154 Ohio St.3d 262, 2018-Ohio-4074, 113 N.E.3d 528.

**{¶ 42}** The board concluded that Cicero "chose to ignore, rationalize, or act ignorant of the unambiguous limitations placed on him" as a suspended attorney and "because he has proven, time and time again * * * that he cannot act as an ethical attorney, he must be permanently disbarred to protect the public." We agree. Considering Cicero's history of misconduct, his flagrant disobedience of our prior suspension orders, the number of aggravating factors here, and the lack of any mitigating evidence, we conclude that he is not fit to practice law in Ohio. Disbarment is the only appropriate sanction.

### Conclusion

**{¶ 43}** Timothy Raymond Dougherty is hereby suspended from the practice of law in Ohio for two years, with the second year stayed on the conditions that he (1) provide proof within 60 days of our disciplinary order that he paid restitution to Angela Granata in the amount of $2,850 and to David Kasser in the amount of $3,200, (2) refrain from any further misconduct, and (3) pay one-half the costs of this proceeding. As a condition of reinstatement, Dougherty must obtain a passing score on the MPRE, in addition to the other requirements of Gov.Bar R. V(24). Upon reinstatement, Dougherty shall serve a two-year period of monitored probation pursuant to Gov.Bar R. V(21) with the monitor focusing on the development and institution of, and compliance with, appropriate law-office-management, client-relationship, and trust-accounting principles.

{¶ 44} Christopher Thomas Cicero is hereby permanently disbarred from the practice of law in Ohio. One-half the costs of this proceeding are taxed to Cicero.

Judgment accordingly.

KENNEDY, FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

O'CONNOR, C.J., and FISCHER, J., would not stay the second year of respondent Dougherty's suspension.

————————————

Joseph M. Caligiuri, Disciplinary Counsel, and Lia J. Meehan, Assistant Disciplinary Counsel, for relator.

Ric Daniell, for respondent Timothy R. Dougherty.

Christopher T. Cicero, pro se.

————————————