**KENTUCKY BAR ASSOCIATION,**
Movant,

v.

**John Reno DEATON, II, KBA Member No. 86763, Respondent.**

**No. 2004–SC–0345–KB.**

Supreme Court of Kentucky.

Sept. 23, 2004.

---

**OPINION AND ORDER**

On April 14, 2004, the Supreme Court of Ohio entered an Order permanently disbarring Respondent, John Reno Deaton, II. *Cincinnati Bar Assn. v. Deaton,* 102 Ohio St.3d 19, 806 N.E.2d 503 (2004). Upon motion by the Kentucky Bar Association (KBA), this Court issued an Order

pursuant to SCR 3.435(2)(b) to show cause, if any, why reciprocal discipline should not be imposed. As Respondent has failed to show such cause, the KBA's petition for reciprocal discipline is granted under SCR 3.435(4), and Respondent is hereby permanently disbarred from the practice of law in Kentucky. The details of Respondent's misconduct, as found by the Board of Commissioners on Grievances and Discipline of the Supreme Court and as adopted by the Supreme Court of Ohio, are set forth below.

First, Respondent agreed to represent a client in a small claims action to recover payment for services. Respondent falsely told this client that he had filed suit and that a trial date had been set, and he subsequently misrepresented twice that this fictitious trial date had been rescheduled. On the day before the second purported trial date, this client told Respondent that he would accept $2,000 to $2,200 to settle the case. The next morning, Respondent told the client that he had received an offer to settle for $2,800. The client accepted the purported offer, and Respondent told the client that he would place the money in escrow, prepare a final settlement arrangement, and deduct his fees. In the ensuing weeks, Respondent failed to return the client's telephone calls. After the client received an invoice from Respondent's law firm for services, the client asked the law firm's office manager about the invoice. Respondent appeared unexpectedly at the client's job site the next day, paying the client $2,000 with a personal check, and withholding $800 as his fee.

Second, another client retained Respondent to petition for a change in the custody of the client's two minor children. On October 23, 2000, Respondent falsely told his client and a child support enforcement agency that he had filed the petition in

court. When he did file the petition on November 9, 2000, the petition erroneously stated that the client's wife had been served with the pleading the previous month. Respondent also misrepresented to the client and the client's mortgage company that the client had been given full custody and was no longer required to pay child support when, in actuality he had only been given temporary custody and was still required to pay child support. As a result of these misrepresentations, the client unwittingly failed to pay the child support that he was required to pay during this period.

Third, Respondent's employer assigned him to represent it in a contract action. Respondent falsely told one of his law firm's partners that he had filed a motion to dismiss a counterclaim as barred by the statute of frauds. Respondent also failed to answer the counterclaim, causing the defendant to move for default judgment. He concealed this failure by not reporting on law firm records his attendance at the hearing on the default motion. While the court denied the default motion, Respondent had also failed to reply to a request for admissions, unbeknownst to his employer. The court accepted the admissions as true and granted partial summary judgment against Respondent's employer as a result.

Fourth, Respondent agreed to represent a client in a personal injury action. Respondent failed to file timely notice of the client's experts. After summary judgment was granted against the client for unrelated reasons, the client asked Respondent to appeal the judgment. Respondent falsely told a partner in his law firm that he had filed the appeal, and he gave the partner a copy of the appellate brief, which included a certificate of service but which did not bear a time stamp from the court. This partner later discovered that Respondent had neither filed the brief in court nor served notice of the brief, as he had represented to the partner.

Fifth, another client retained Respondent to represent her in a personal injury action. Respondent falsely told the client and his co-counsel that he had found an expert favorable to the client's case, and that he had advanced $1,200 to the expert and obtained a report from the expert. Respondent never complied with his co-counsel's repeated requests for a copy of the report, and his co-counsel and the client later discovered that Respondent had not located an expert, paid costs, or obtained a report.

Sixth, a client consulted Respondent regarding a claim of employment discrimination and an incident of assault. Respondent agreed to file a complaint for at least one of the client's two matters, and Respondent's time sheets reflected that he had prepared the complaint in advance of the filing deadline. In fact, Respondent failed to file the complaint, and he stopped returning the client's calls after missing the deadline.

Seventh, a client retained Respondent to petition for guardianship of the client's elderly aunt. Respondent arranged for the client's appointment as guardian but thereafter failed to file timely inventories and accountings in the guardianship. The client's aunt died on January 22, 2001, and Respondent agreed to oversee administration of her estate. Respondent failed to return the client's calls over the next several months. On June 18, 2001, a second aunt told the client of a hearing to close the deceased aunt's estate, scheduled for June 20, 2001. Although Respondent told the client and the aunt that they did not need to attend the hearing, they both went to the courthouse, and when they found Respondent, he told them that he was going to file some papers and asked them

to wait in the lobby for his return. Respondent never returned to the courthouse lobby, and the client and his aunt learned from the magistrate that Respondent had just filed the guardian's inventory, which should have been filed five months earlier. Respondent never communicated with the client after this incident. Respondent also had never opened the deceased aunt's estate, contrary to his representations to the client.

Eighth, Respondent agreed to defend a client against a charge of driving under the influence. Respondent failed to return the client's calls until after the client complained to a senior partner of Respondent's law firm. Moreover, although Respondent told the client that he would file a motion to suppress, Respondent failed to do so. After the client had missed a hearing, the client tried to contact Respondent without success, and Respondent never told the client that the client's failure to appear had resulted in a warrant for his arrest. The client only learned of the arrest warrant after police went to his home and his daughter informed him of the situation. At the scheduled trial date, Respondent recommended that the client plead guilty. The client did so, and Respondent promised to appeal. The client subsequently attempted to contact Respondent about the appeal on many occasions without success, eventually learning from a partner in Respondent's law firm that the time for appeal had elapsed and that the client's guilty plea had precluded an appeal.

Ninth, a client retained Respondent to represent him in an action to clear the title of property held in trust. On several occasions, Respondent misrepresented to his client that the action had been filed in probate court. Respondent also scheduled a "dry closing" on the property, assuring the client that all issues of title had been resolved. The client subsequently learned that Respondent had not filed the action to clear title, and that the property could thus not be transferred.

Tenth, a client retained Respondent to represent her in a divorce action, paying him a flat fee of $350. At that time, Respondent was practicing on his own, as his former law firm had terminated his employment. When Respondent later joined another law firm, the firm sent invoices for his services to this divorce client, but Respondent told the client to ignore the invoices. Respondent then stopped communicating with the client, and the client eventually learned that Respondent had never filed anything on her behalf. Respondent only refunded the client's money after her repeated requests.

Eleventh and finally, Respondent agreed to defend another client against charges of driving under the influence. On the day of the client's first hearing, Respondent told the client and his family that the arresting officer was willing to agree to a reduction of the charges, but that the prosecutor was not. Respondent did not suggest any pretrial motions or continuances and advised the client to plead guilty or no contest. The client pled no contest and gave Respondent medical evidence for the court's consideration at sentencing. Respondent did not use this evidence. The client then retained new counsel, and the court granted the new attorney's motion to withdraw the client's plea. Thereafter, the charges against the client were reduced to the offense that Respondent had stated the prosecutor had previously rejected.

The Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio found the facts as previously set forth and concluded that Respondent's conduct violated Ohio Disciplinary Rule 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or mis-

representation); 2–106(a) (charging a clearly excessive fee); 6–101(A)(3) (neglecting an entrusted legal matter); 7–101(A)(1) (failing to seek a client's lawful objective through reasonable means); 7–101(A)(2) (failing to carry out a contract for professional services); 7–101(A)(3) (causing client damage or prejudice); 7–102(A)(5) (knowingly making a false statement of law or fact); and 9–102(B)(4) (failing to promptly pay the client funds to which the client is entitled). The Supreme Court of Ohio held that an indefinite suspension was too lenient, as Respondent had deliberately concealed his neglect to protect his own interests on several occasions, thereby sacrificing his clients' welfare for the sake of his own. Finding no mitigating circumstances, the Supreme Court of Ohio ordered Respondent's disbarment.

The Kentucky Bar Association filed a Petition for Reciprocal Discipline on April 29, 2004 and supplemented it with a certified copy of the Order from the Supreme Court of Ohio. On June 17, 2004, this Court entered an Order that directed Respondent "to show cause, if any, pursuant to SCR 3.435(2)(b) why the imposition of identical discipline in this Commonwealth would be unwarranted and the reasons therefore." Pursuant to SCR 3.495(2)(b), notice of the order and a copy of the order of the Supreme Court of Ohio were directed to Respondent by certified mail at his Bar Roster address, SCR 3.175(1)(a).

Thirty days have expired since service of the order directing Respondent to show cause why this Court should not impose reciprocal discipline, and this Court has received no response from Respondent. Therefore, pursuant to SCR 3.435(4), this Court grants the Kentucky Bar Association's Petition for Reciprocal Discipline and hereby orders that:

1. Respondent, John Reno Deaton, II, shall be permanently disbarred from the practice of law in the Commonwealth of Kentucky.

2. Pursuant to SCR 3.390, Respondent shall, within ten days from the entry of this Opinion and Order, notify in writing all courts in which he has matters pending and all clients he is currently representing of his inability to provide further legal services, and provide the Director of the Kentucky Bar Association with a copy of all such notice letters, or with a certification that he has no active clients, whichever is applicable.

3. Respondent is further ordered to pay any and all costs associated with this disciplinary proceeding, under SCR 3.450.

All concur.

ENTERED: September 23, 2004.

/s/ Joseph E. Lambert
CHIEF JUSTICE