

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00374-CR

---

**SERGIO HERRADA AKA SERGIO JOSE HERRADA
AKA SERGIO JOSE GOMEZ HERRADA, APPELLANT**

V.

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 460th District Court
Travis County, Texas
Trial Court No. D-1-DC-19-301517, Honorable Selena Alvarenga, Presiding

---

November 30, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Following a plea of not guilty, Appellant, Sergio Herrada, a/k/a Sergio Jose Herrada, a/k/a Sergio Jose Gomez Herrada, was convicted by a jury of murder with an affirmative finding on use of a deadly weapon, not a firearm, and was sentenced to fifty years' confinement.[1] A fine of $5,000 was waived by the trial court. The judgment reflects a special finding pursuant to article 42.013 of the Texas Code of Criminal Procedure that

---

[1] TEX. PENAL CODE ANN. § 19.02(b)(1), (c).

the offense involved family violence.  He challenges his conviction by the following nine issues:

(1) the trial court abused its discretion in denying his motion for continuance after the State failed to disclose *Brady* material until two days before trial;

(2) the trial court abused its discretion in overruling a challenge for cause for bias which resulted in use of a peremptory challenge and an objectionable juror sitting on the jury;

(3) the trial court abused its discretion in denying his motion for mistrial after the State impermissibly commented on his post-arrest silence during opening arguments;

(4) the trial court abused its discretion in denying his motion for mistrial after the State violated a motion in limine by soliciting testimony regarding an extraneous offense;

(5) the trial court abused its discretion in admitting evidence of the decedent's cell phone found by a private citizen who broke into his work van without his consent;

(6) the trial court abused its discretion in admitting the decedent's cell phone records without complying with Rule 902(10) of the Texas Rules of Evidence;

(7) the trial court abused its discretion in denying his motion for mistrial after the State violated the motion in limine by soliciting testimony from Detective Ramirez about his jail calls and his custodial status after failing to advise him of the trial court's order;

(8) the trial court abused its discretion in sustaining the State's objection to admission of the decedent's loan business ledger book which provided evidence of an alternative perpetrator which violated his constitutional right to present a complete defense; and

(9) the trial court's cumulative errors cast doubt on the integrity of the jury's verdict.

We affirm.[2]

---

[2] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001.  Should

Appellant was indicted for first degree murder. He was charged with stabbing and cutting his significant other in the neck with a sharp object on August 4, 2019.

The decedent and Appellant lived together for approximately two years before her murder. The decedent had three teenage children, a daughter and two sons, who also lived with them. Appellant drove a white work van and worked as a framer in construction. The decedent had recently begun working cleaning apartments with a close friend.

On the afternoon of August 3, 2019, Appellant was dropped off at his home by a friend driving a black sedan.[3] After some time, the friend left in the sedan and Appellant sat outside his house consuming a beverage for several hours. The decedent returned home from work at approximately 6:00 p.m. in her red Toyota Camry. She had a brief conversation with Appellant, who was still sitting outside. She then entered her home.

At approximately 8:00 p.m., Appellant phoned the friend who had previously driven him home. He then drove away in the decedent's Camry. He returned a few minutes later, retrieved something from his work van, and left again. Minutes later, Appellant again phoned his friend near a cell tower located at a business named G's Audio. Around that same time, the data location from the decedent's phone placed her phone at the same location even though she was not there. Video footage from the business showed Appellant parked the decedent's Camry in the parking lot and was then picked up by his

---

a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[3] The timeline of events was provided during trial by surveillance camera footage from two neighbors and cell phone data.

3

friend in the black sedan. Appellant texted the decedent's daughter, Arantxa Duarte, to let her know he and her mother would be home late.

On Sunday, August 4, neither Arantxa nor the decedent's son, Victor Garcia, Jr., had heard from their mother and her Camry was not parked at home. According to Arantxa, Sunday was a day to spend with family and it was unusual for her mother and Appellant not to be home. Victor, Jr. went to work and Arantxa left to spend time with friends.

Later that evening, when calls and texts to her mother were still unanswered, Arantxa became worried and called 911 to report her missing. Some of her cousins came to the house to wait for police with her. Before police arrived, the cousins looked in the decedent's bedroom to see if she had packed any clothes or anything was out of place. The bathroom door was locked which was unusual, but one of Arantxa's cousins picked the lock. He walked into the bathroom and discovered the decedent's body in the bathtub in a pool of blood. The police were called again to report discovery of the body.

The family members were interviewed by police and eventually allowed to return home. While looking through the house, a family member discovered a knife in the garage that police had not found during the investigation. A detective was called to retrieve the knife as evidence. A DNA expert testified the knife was believed to be the murder weapon. According to the expert, the DNA profile obtained from the handle of the knife was interpreted as a mixture of two individuals with at least one male contributor with the likelihood of obtaining that profile being "approximately 39.2 quadrillion times more likely if the DNA originated from [Appellant]."

4

On Monday, August 5, Appellant went to a friend's house and told him he and the decedent had been arguing. The friend invited Appellant to spend the night. The next morning, Appellant was warned that authorities had located him and he asked his friend to help him evade the police. According to the friend, Appellant was going to Mexico but he instead turned himself in on August 8 and was indicted for murder.

**ISSUE ONE—DENIAL OF MOTION FOR CONTINUANCE**

Appellant argues the trial court abused its discretion in denying his motion for a continuance after the State failed to disclose *Brady v. Maryland*[4] material until two days before trial thereby depriving him of a meaningful opportunity to investigate an alternative perpetrator theory. We disagree.

Appellant contends the State was aware almost three weeks prior to commencement of trial that Victor, Jr. was an alternative perpetrator but did not disclose the exculpatory evidence until two days before trial. The information was disclosed in an email on the Saturday before trial. Prosecutors had interviewed Arantxa who disclosed that when she informed the decedent's ex-husband, Victor Garcia, Sr., of the death, he wondered if Victor, Jr. was somehow involved. Appellant posits a continuance was necessary to investigate whether Victor, Jr. had a role in the murder.

Prior to voir dire, defense counsel presented a written motion for continuance alleging a violation of article 39.14 of the Texas Code of Criminal Procedure.[5] One of the

---

[4] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). *Brady* requires the State to disclose to an accused material information that is exculpatory.

[5] Article 39.14 requires the State to disclose to the defendant any exculpatory evidence which would tend to negate guilt. TEX. CODE CRIM. PROC. ANN. art. 39.14(h).

prosecutors conceded she made a mistake and forgot to disclose evidence to defense counsel until shortly before trial. Despite expressing concern the State did not immediately reveal potential *Brady* material, the trial court ruled the delay by the State was an "oversight" and denied the motion for continuance. The trial court added that defense counsel was provided with Victor, Sr.'s contact information and could have communicated with him directly and would have the opportunity to cross-examine him during trial.

To establish reversible error in the denial of a motion for continuance, a defendant must show the trial court abused its discretion in denying the motion as well as prejudice in the lack of a continuance. *Gonzales v. State*, 304 S.W.3d 838, 842–43 (Tex. Crim. App. 2010). *Brady* requires the State to disclose material information that is exculpatory. *Brady,* 373 U.S. at 87. Evidence is "material" when there is a possibility the result of the proceeding would have been different had the evidence been disclosed. *Ex parte Carty*, 543 S.W.3d 149, 180 (Tex. Crim. App. 2018) (Walker, J., concurring). The mere possibility that exculpatory evidence may have helped the defense or might have affected the outcome of the trial does not establish materiality in the constitutional sense. *Webb v. State*, 232 S.W.3d 109, 115 (Tex. Crim. App. 2007). The burden under *Brady* is not met when, despite late disclosure of exculpatory evidence, it is disclosed in time to use it effectively at trial. *Robles v. State*, No. 03-09-00209-CR, 2010 Tex. App. LEXIS 4412, at *6 (Tex. App.—Austin June 11, 2010, pet. ref'd) (mem. op., not designated for publication). To prevail on a *Brady* violation, a person must show the following: (1) the evidence is favorable to the accused because it is exculpatory or impeaching; (2) the evidence was suppressed by the State either inadvertently or willfully; and (3) the

6

suppression of the evidence resulted in prejudice. *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).

Appellant argues the denial of the opportunity to present evidence of Victor, Jr. as an alternative perpetrator caused him to suffer harm of a constitutional magnitude because he was not allowed to present a complete defense. The record, however, shows the defense's investigator, who had been appointed almost three years earlier, had reviewed a neighbor's camera footage obtained by police. The footage revealed Victor, Jr. had been seen coming and going from his mother's home around the time of her murder. The defense was also provided with an interview of Victor, Jr. by a detective. Although the son provided an alibi, the detective testified he did not follow up on it. The defense could have investigated an alternative perpetrator theory based on information already available to it. The trial was lengthy, affording the defense team time to interview Victor, Sr. but he was not contacted nor was he presented as a witness.

The disclosure by the State, although tardy, did not prevent the defense from effectively using the information at trial. Thus, Appellant did not establish a *Brady* violation, nor did he show any prejudice by the tardy disclosure. The trial court did not abuse its discretion in denying the motion for continuance. Issue one is overruled.

### ISSUE TWO—DENIAL OF CHALLENGE FOR CAUSE OF BIASED VENIRE MEMBER

Appellant asserts the trial court abused its discretion in overruling his challenge for cause to venire member 17 for being biased. We disagree.

A venire member is challengeable for cause if he has a bias or prejudice against the defendant or the law on which the State or the defendant is entitled to rely. TEX. CODE

7

CRIM. PROC. ANN. art. 35.16(a)(9); *Hudson v. State*, 620 S.W.3d 726, 731 (Tex. Crim. App. 2021). Before a venire member may be removed for cause, the law must be explained to him, and he must be asked whether he can follow the law regardless of his personal views. *Hudson*, 620 S.W.3d at 731.

When reviewing a trial court's denial of a challenge for cause, a reviewing court gives considerable deference to the decision because the trial court is in the best position to evaluate the demeanor and responses of the venire person. *Id.* (citing *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009)). Reversal is required only for a clear abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010).

In the underlying case, defense counsel asked the venire members, "[w]ho here thinks he's probably guilty?" Number 17 responded, "there's a greater possibility that he's guilty, having been charged, I feel like. . . . Yeah. I just said I feel like there's a greater probability that he's guilty, having been charged." Number 17 continued, "I've never been a juror, but I - - I like feel like I would not be biased taking all the evidence into account." He added, "just because he's been charged, I - - I won't hold that against him, no."

When the trial court was considering challenges for cause, defense counsel requested number 17 be excused because "he thought there was a greater possibility that [Appellant] was guilty." The State countered that the potential juror clarified he would not be biased, would consider all the evidence, and not hold being charged against Appellant.

The court informed number 17 the State was required to prove the offense beyond a reasonable doubt and that a juror must wait to determine guilt. He responded, "I would

8

be able to wait for all of the evidence to be presented by the prosecution and the defense before coming to any conclusion about the guilt or innocence of the accused."[6] The trial court denied the challenge for cause after which defense counsel moved to strike number 17. His request was denied, and a peremptory strike was used to remove number 17. Defense counsel requested an additional peremptory strike because venire member 5 was seated on the jury and would have otherwise been struck. The trial court denied the request.

Notwithstanding that number 17 initially indicated his belief that being charged with an offense indicates guilt, once the trial court explained the law and the State's burden, he unequivocally revealed he would not hold being charged against Appellant. Number 17 was further questioned by both sides, and he resolved not to reach a conclusion on guilt or innocence until all the evidence had been presented. The defense did not meet the burden to show that number 17 understood the law but could not overcome his bias. We cannot say there was a clear abuse of discretion by the trial court in denying the challenge for cause. Issue two is overruled.

**ISSUES THREE, FOUR, AND SEVEN—DENIAL OF MOTIONS FOR MISTRIAL**

Appellant maintains the trial court abused its discretion in denying his motions for mistrial when the State impermissibly commented on his post-arrest silence during opening argument (Issue Three), after the State elicited testimony regarding an

---

[6] The State injected that number 17 was merely speaking in mathematical probabilities when comparing the probability of guilt of someone who has been charged with someone "off the street." Defense counsel objected to the line of questioning and asked number 17 if he would presume someone other than the defendant to be more innocent to which he responded, "the law says that I can't do that, and so I won't."

9

extraneous offense in violation of a motion in limine (Issue Four), and when a witness testified about jail phone calls in violation of a motion in limine (Issue Seven).

A mistrial is an extreme remedy, to be sparingly used for "a narrow class of highly prejudicial and incurable errors" committed during the trial process. *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018). It is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Accordingly, a trial court would be required to grant a mistrial only in those instances where it is apparent from the record that an objectionable event has occurred which is so inflammatory that curative instructions would most likely be unsuccessful in preventing the jury from being unfairly prejudiced against the defendant. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2004). We must uphold a trial court's ruling if it is within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). The denial of a motion for mistrial is reviewed for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

An appellate court considers the following factors in determining whether a trial court abused its discretion in denying a motion for mistrial: (1) the severity of the misconduct, (2) curative measures, and (3) the certainty of conviction absent the conduct. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Appellant complains of the denial of three separate motions for mistrial. For convenience, the issues are consolidated but each will be reviewed on its own merits.

10

**First Motion for Mistrial**

During opening arguments, while the prosecutor was setting forth what the evidence would show, she remarked that Appellant turned himself in three days after the murder and "made no statements to the police." Defense counsel objected that her comment was an impermissible statement on Appellant's Fifth Amendment right to remain silent. After the trial court admonished the prosecutor to not make any such statements, the jury was instructed to disregard the comment. Defense counsel moved for mistrial asserting the instruction to the jury was insufficient to cure such an egregious comment. The motion was denied, and defense counsel requested the prosecutor be held in contempt. The prosecutor was again admonished and informed a further infraction would result in contempt. Appellant maintains there was a manifest necessity to end the trial and the trial court's denial of his motion for mistrial resulted in an abuse of discretion.

Prosecutorial argument referencing a defendant's failure to testify violates his rights against compelled self-incrimination. U.S. CONST. amend V; TEX. CONST. art. I, § 10. In *Archie*, the prosecutor's closing argument highlighted the defendant's failure to testify. 340 S.W.3d at 737, 740. Defense counsel's objection of improper jury argument was sustained but a motion for mistrial was denied. On direct appeal, the conviction was reversed for "highly prejudicial" argument which would not necessarily have been cured by an instruction. *Archie v. State*, 311 S.W.3d 556, 560–61 (Tex. App.—Waco 2009). The Court of Criminal Appeals reversed—reasoning the Waco Court of Appeals erred in its balancing of the *Mosley* factors to conclude the trial court abused its discretion in denying Archie's motion for mistrial. *See Archie*, 340 S.W.3d at 740. *See also Briscoe*

11

*v. State*, No. 03-11-00014-CR, 2013 Tex. App. LEXIS 10859, at *28 (Tex. App.—Austin Aug. 29, 2013, no pet.) (mem. op., not designated for publication).

In the underlying case, the trial court observed the seriousness of the prosecutor's comment, instructed the jury to disregard, and admonished the prosecutor to refrain from making further comments. Under the first *Mosley* factor, the comment was serious; however, it was very brief in light of the prosecutor's remarks regarding what the evidence would show. No further comments infringing on Appellant's failure to testify were made.

A presumption that an instruction to disregard does not necessarily cure a comment on a defendant's failure to testify "has been eroded to the point that it applies only to the most blatant examples." *Moore v. State*, 999 S.W.2d 385, 405 (Tex. Crim. App. 1999). Here, the trial court took immediate measures by instructing the jury to disregard while reminding the jury of a defendant's constitutional right not to testify. The trial court further instructed the jury that arguments of counsel are not evidence. Applying the second *Mosley* factor, we find the prosecutor's comment was not so blatant as to render the trial court's instruction ineffective. *Briscoe*, 2013 Tex. App. LEXIS 10859, at *29–30.

The third *Mosley* factor requires us to evaluate the certainty of conviction by reviewing the strength of the evidence. There was overwhelming evidence of Appellant's guilt. Video footage from a neighbor's camera placed him at home around the time of the murder. Cell phone evidence also linked him to the crime. Arantxa's testimony contradicted what Appellant had told her when she was concerned her mother was not responding to calls or texts. There was also DNA evidence linking Appellant to the handle

12

of the knife used to stab the decedent. The third *Mosley* factor weighs in favor of the State. The trial court did not abuse its discretion in denying Appellant's first motion for mistrial.

**Second Motion for Mistrial**

Eva Carcamo, the decedent's friend with whom she worked, testified through an interpreter she had known the decedent and her family for sixteen years and they were very close. She testified she never witnessed the decedent and Appellant argue except for an incident during a party for Arantxa. Appellant was jealous of a classmate of Arantxa's whom he believed was flirting with the decedent.

During Eva's cross-examination, she volunteered in Spanish that Appellant pulled a pistol at the party. Although the testimony was not translated into English at that time, defense counsel asked to have the answer stricken and the jury instructed to disregard because he believed "several of the jurors clearly [spoke] Spanish." He argued Eva's testimony implicated an extraneous offense in violation of the motion in limine.

After a recess, outside the jury's presence, the interpreter was asked to translate Eva's response for the record. To the interpreter's recollection, Eva testified Appellant "pulled his pistol out of the holster in front of everybody." Despite defense counsel's recollection being that Eva said Appellant waved and fired the pistol, the interpreter recalled the witness gesturing but did not have any notes of defense counsel's recollection.

Following the interpreter's translation for the record, defense counsel moved for mistrial alleging a violation of the motion in limine and accusing the prosecutor of bad faith

in failing to admonish its witnesses about not testifying to extraneous offenses. The trial court denied the motion noting Eva's statement was not in response to a question and that the jury would be instructed to disregard the comment as unresponsive. Prompted by defense counsel, the trial court also announced jury members who understood Spanish would be instructed not to consider Eva's comment during deliberations. To defense counsel's disappointment, the trial court declined to ask jury members if they spoke or understood Spanish.

Here, Appellant contends the State violated his right to a fair trial and caused him unfair prejudice by leaving the jury with the impression he was a violent and jealous person. In applying the *Mosley* factors, the record shows the State was aware of Appellant's conduct of waving a pistol as it was included in its Rule 404(b) notice on extraneous offenses. During its examination of the witness, the State did not seek any improper testimony about the pistol. It limited its examination to admissible evidence. There is nothing in the record to indicate the State was at fault in Eva's spontaneous, unsolicited comment.

Also, the record does not reflect if any of the jurors spoke or understood Spanish. But even if any of them did, the trial court gave a curative instruction which we presume the jurors followed. *See Young v. State*, 591 S.W.3d 579, 596 (Tex. App.—Austin 2019, pet. ref'd) (noting an appellate court presumes a jury followed trial court's instructions to disregard). *See also Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (noting that generally an instruction to disregard will cure any error associated with an improper reference to extraneous conduct committed by the defendant).

14

As previously discussed, there was overwhelming admissible evidence of Appellant's guilt. We conclude application of the *Mosley* factors to Appellant's second motion for mistrial weighs in favor of the State and the trial court did not abuse its discretion in denying the motion.

**Third Motion for Mistrial**

Appellant's third motion stemmed from direct questioning by the State of a detective who inadvertently revealed Appellant's custodial status of incarceration. On a Friday afternoon the prosecutor asked the detective questions attempting to show Appellant had made frequent calls from jail to a phone number associated with his ex-wife. The prosecutor asked the detective if he was "aware that [Appellant] had a - - a previous partner with - - with which he has a child." Defense counsel lodged a hearsay objection. The prosecutor informed the trial court the detective knew the phone number was registered to Appellant's ex-wife which defense counsel argued was double hearsay.

The prosecutor explained she only wanted to illustrate that a certain phone number was used by Appellant's ex-wife without informing the jury the detective had listened to Appellant's jail house calls. The trial court permitted the prosecutor to ask the detective one question to establish a link between the phone number and Appellant's ex-wife. Otherwise, the trial court sustained defense counsel's objection.

Thereafter, the prosecutor asked the detective whether he attempted to interview the ex-wife. The detective answered "while listening to jail calls, I learned that . . . ." Defense counsel immediately moved for mistrial alleging prejudice by the detective's

15

response and accused the State of provoking the response. The jury was removed and the following transpired:

> Court: State, did you not admonish your witness that he cannot talk about any jail calls?
>
> State: Your Honor, I don't believe that today I specifically admonished him of that, no. But I - - clearly, I just approached the Bench in order to prevent a mention of jail calls. I'm not trying to duck my duty in that regard.

Defense counsel expressed his frustration over the frequency of the State's "provocation" and interference with Appellant's ability to have a fair trial. The trial court recessed for the weekend and deferred a ruling on the motion for mistrial until Monday.

When trial resumed, the State argued that an inadvertent reference to a defendant's incarceration can be cured by an instruction to disregard and that an abuse of discretion occurs when a less drastic remedy than mistrial is not explored. Defense counsel reminded the trial court it had already given several instructions to disregard for other infractions during trial.

The trial court denied the motion for mistrial noting the detective's reference to jail calls was not in response to questioning by the State and that during a bench conference both sides had agreed there would be no mention of the calls. The trial court found the State did not act in bad faith and the appropriate remedy would be an instruction to disregard. The trial court did acknowledge that given previous motions for mistrial, the State was required to instruct its witnesses not to testify to matters referenced in the motion in limine. The detective was also admonished to answer only the questions put forth to him.

16

Appellant argues the denial of his third motion for mistrial resulted in an unfair trial and that mere instructions to disregard did not cure the harm inflicted. The State maintains Appellant waived any complaints regarding his third motion because his complaint at trial was the "cumulation of all these gaffes" which does not comport with his appellate complaints of a violation of his due process rights. In considering whether error has been preserved, a reviewing court does not consider arguments in isolation but instead looks to the context of the entire record. *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). A reviewing court should not be "hyper-technical in examination of whether error was preserved." *Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007).

Prior to the Friday afternoon recess following the motion for mistrial, defense counsel did claim Appellant was being denied his right to a fair trial. Construing the denial of the right to a fair trial as encompassing a violation of his right to due process, we review his complaint.

A witness's reference to a defendant's incarceration is improper because it violates the evidentiary rule against introducing collateral offenses and transactions. TEX. R. EVID. 404(b). A witness's inadvertent reference implying a defendant is incarcerated is cured when the trial court instructs the jury to disregard the answer. *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992).

The first *Mosley* factor weighs in favor of Appellant as it was improper for the detective to imply he was incarcerated. The law, however, permits a curative instruction even when the misconduct refers to incarceration. *Id.* Thus, the second factor weighs in

17

favor of the State. As previously discussed, the third *Mosley* factor also favors the State as there was a certainty of conviction even without the detective implying Appellant was incarcerated. The trial court did not abuse its discretion in denying the third motion for mistrial.

Having found no abuse of discretion by the trial court in its rulings on all three motions for mistrial, issues three, four, and seven are overruled.

**ISSUE FIVE—ADMISSION OF DECEDENT'S CELL PHONE**

Appellant alleges abuse of discretion by the trial court in denying his motion to suppress evidence from the decedent's cell phone. He contends article 38.23(a) of the Texas Code of Criminal Procedure[7] required exclusion of the evidence because Victor, Jr. retrieved the phone from Appellant's work van without his consent to enter the van. We disagree.

During Arantxa's testimony, she was questioned about her mother's phone which had been missing for approximately one month. When asked if she ever saw the phone again, defense counsel lodged an objection based on article 38.23 arguing that Victor, Jr. had found the phone by committing burglary of Appellant's van. During his objection, defense counsel acknowledged the phone was turned over to law enforcement.

Later in the trial when Victor, Jr. testified, the State attempted to show Appellant had never denied him access to the van. They worked in carpentry together and he

---

[7] Article 38.23(a) provides that no evidence obtained by an officer or *other person* in violation of the laws and Constitution of Texas or of the United States Constitution shall be admitted in evidence against the accused in a criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (emphasis added).

18

occasionally retrieved tools from the van for Appellant. After his mother's death, Victor, Jr. admitted he broke into the van where he found her damaged cell phone wrapped in a shirt. He left the phone in the van and a family member called a detective to take possession of it. During cross-examination, he conceded he did not have a driver's license and was never allowed to drive the van or have keys to the van.

Defense counsel made various arguments to have the phone suppressed under article 38.23. The trial court denied the motion to suppress.

Generally, article 38.23(a) requires suppression of evidence obtained illegally. *State v. Johnson*, 939 S.W.2d 586, 588 (Tex. Crim. App. 1996). Article 38.23(a) applies to officers as well as private citizens. *Id.* However, there is no violation of the statute when a private citizen not acting as an agent of the State takes property that is evidence of a crime without the effective consent of the owner but with intent to turn the property over to law enforcement. *Jenschke v. State*, 145 S.W.3d 398, 402 (Tex. Crim. App. 2004). Under such circumstances, the taking of property is not a theft and does not require suppression. *Id.*

Here, the evidence shows that although Victor, Jr. admitted he broke into Appellant's van and found the phone, his intent was to provide it to law enforcement. Thus, there was no violation of article 38.23 and the trial court did not abuse its discretion in denying Appellant's motion to suppress admission of the phone. Issue five is overruled.

ISSUE SIX—BUSINESS RECORDS AFFIDAVIT

Appellant contends the trial court abused its discretion in admitting the decedent's cell phone records during a detective's testimony without complying with Rule

19

902(10)(B)(2) of the Texas Rules of Evidence. His specific complaint is that the number of pages included in the exhibit was omitted. We disagree.

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). An abuse of discretion occurs when the decision falls outside the zone of reasonable disagreement. *Id.* at 83.

During one of the detective's testimony, the State offered the decedent's cell phone records with a business records affidavit identified as State's Exhibit 66. The records were accompanied by a *Certificate of Authenticity of Domestic Records Pursuant to Federal Rules of Evidence 902(11) and 901(13)* which was signed by the cell phone provider's Legal Compliance Analyst. Appellant objected claiming the affidavit "fail[ed] on its face" because it had been prepared pursuant to the Federal Rules of Evidence and not the Texas Rules of Evidence.

The State argued the document was prepared as required under Texas law "in the ordinary course of AT&T business by a person with knowledge" and surmised it had been prepared under the federal rules to avoid having fifty different certificates of authenticity— one for each state. The trial court found the certificate was in sufficient form to comply with a business records affidavit under Texas rules and overruled Appellant's objection.

Defense counsel continued to challenge the document and claimed, among other deficiencies, that the certificate did not provide the number of pages attached as required

by Rule 902(10)(B)(2). The trial court again found the document sufficient to meet the rule's requirements and admitted Exhibit 66 over objection.[8]

Rule 902(10)(B) provides the form requirements for a business affidavit. TEX. R. EVID. 902(10)(B). Paragraph 2 provides as follows: "Attached are __ pages of records. These are the original records or exact duplicates of the original records." TEX. R. EVID. 902(10)(B)(2). Appellant suggests the requirement of including the number of pages ensures transparency and that without compliance, an opposing party is unable to determine whether the exhibit is complete and authentic. He contends the trial court's admission of the records was an abuse of discretion and resulted in harm because they were critical in establishing that he and the decedent were in the same location around the time of the murder.

Appellant's argument has been rejected by the Third Court of Appeals. *See Educap, Inc. v. Mendoza*, No. 07-18-00686-CV, 2019 Tex. App. LEXIS 8694, at *10–11 (Tex. App.—Austin Sept. 27, 2019, no pet.) (mem. op.). In *Educap, Inc.*, the appellant argued a business records affidavit was fatally defective because the number of pages had been omitted. *Id.* at *10. In acknowledging that Rule 902(10)(B) provides the form for an affidavit "is not exclusive," the court noted substantial compliance was sufficient. *Id.* The court could not conclude the failure to include the number of pages "necessarily prevent[ed] a party from satisfying the business records predicate . . . ." *Id.* at *10–11. We find no abuse of discretion in admitting State's Exhibit 66. Issue six is overruled.

---

[8] The State also offered cell phone records from another provider to which Appellant lodged the same objections as the AT&T records.

**ISSUE EIGHT—EXCLUSION OF DECEDENT'S LEDGER OF MONEY LENDING**

Appellant alleges abuse of discretion by the trial court in sustaining the State's objection to admission of Defendant's Exhibit 32, a ledger book in which the decedent recorded information of an alleged money lending business. We disagree.

As previously observed, a trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Henley*, 493 S.W.3d at 82–83. During the testimony of the defense's private investigator, he was provided with Defense Exhibit 32, a ledger belonging to the decedent allegedly detailing her money lending business. He had obtained the ledger from Arantxa. The State vehemently opposed admission of the ledger on hearsay and relevance grounds. Outside the jury's presence, the trial court considered arguments by both sides.

The defense argued the ledger was evidence of a loan shark operation which would provide alternative perpetrators to the murder and sought to authenticate it as a business records exception to hearsay through testimony from Arantxa. The State countered the ledger did not contain sufficient information for authentication and lacked reliability. It did not provide last names, specific dates or years, or any information to show an actual business. The true custodian of records for the ledger was the decedent, not her daughter. The trial court concluded the ledger was not admissible and the defense presented an offer of proof via Arantxa.[9]

---

[9] The defense supplemented its offer of proof with prior statements made by Arantxa regarding the ledger.

Arantxa testified she provided the private investigator with the ledger. According to her testimony, her mother made loans to people for profit. Although her mother documented some information in the ledger, most of the time, details were committed to memory. Arantxa authenticated her mother's handwriting but could not say with certainty if the ledger was the book she was using at the time of her death.

Here, Appellant contends the trial court should have admitted the ledger as an exception to hearsay under Rule 803(6) of the Texas Rules of Evidence. Rule 803(6) excepts from the hearsay rule records of events if a custodian or other qualified witness testifies the records were made at or near the time of the event by a person with knowledge and kept in the course of a regularly conducted business activity, whether conducted for profit or not. TEX. R. EVID. 803(6). The predicate witness does not have to be the creator of the records sought to be admitted and need only have knowledge of the manner in which the records were prepared. *Educap, Inc.*, 2019 Tex. App. LEXIS 8694, at *7; *Reyes v. State*, 48 S.W.3d 917, 921 (Tex. App.—Fort Worth 2001, no pet.). Reliability and trustworthiness of the records sought to be introduced must be evident and admission is not automatic. *State v. Conway*, No. 03-97-00202-CR, 1997 Tex. App. LEXIS 5005, at *3 (Tex. App.—Austin Sept. 18, 1997, no pet.) (mem. op., not designated for publication) (citing *Coulter v. State*, 494 S.W.2d 876, 883 (Tex. Crim. App. 1973)).

Arantxa testified her mother's money lending business was a "side hustle" after she had quit her previous job. She confirmed observing her mother make some but not all entries in the ledger. Arantxa could not confirm the particular years associated with entries and testified, "I don't think it's in order." She replied, "I don't know" when asked if the ledger was the book her mother had used before her death.

23

The trial court ruled the ledger was not associated with a "regularly conducted business." Arantxa's testimony did not make her a "qualified witness" with knowledge that the ledger was kept in the course of a regularly conducted business. The offer of proof was not trustworthy nor reliable as a hearsay exception under Rule 803(6). We find the trial court did not abuse its discretion in excluding the ledger as evidence. Issue eight is overruled.

## ISSUE NINE—CUMULATIVE ERRORS

Relying on *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal of petition), Appellant asserts the cumulative effect of the trial court's errors casts doubt on the integrity of the jury's verdict. We disagree.

During trial, after various motions for mistrial, defense counsel requested a ruling from the trial court on the cumulative effect of violations of the motion in limine. The trial court ruled a mistrial was not warranted.

"It is conceivable that a number of errors may be found harmful in their cumulative effect." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). However, the cumulative-error doctrine affords relief only when constitutional errors so "fatally infect the trial" that they violate the trial's "fundamental fairness." *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004). But the cumulative effect of non-errors is not error. *Chamberlain*, 998 S.W.2d at 238. If a defendant fails to prove any error as to his complaints separately, there is no cumulative harm. *Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016).

The State responds that none of Appellant's issues presented any reversible error. Thus, "there can be no cumulative error." *See In re J.D.*, No. 03-14-00075-CV, 2016 Tex. App. LEXIS 1075, at *15 n.31 (Tex. App.—Austin Feb. 3, 2016, no pet.) (mem. op.) (declining to find cumulative error in admission of evidence which was not erroneously admitted). *See also Baker v. State*, No. 03-18-00240-CR, 2019 Tex. App. LEXIS 3062, at *17–18 (Tex. App.—Austin April 17, 2019, no pet.). Having resolved Appellant's previous issues against him, we agree with the State the record does not present any reversible error, much less cumulative error. Issue nine is overruled.

### REFORMATION OF JUDGMENT

In reviewing the record, we note the trial court's judgment contained in the clerk's record reflects a clerical error. The summary portion of the judgment under "Plea to Offense" shows Appellant pleaded "guilty" to the offense. The reporter's record, however, reveals Appellant entered a plea of "not guilty."

This Court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). The power to reform a judgment is "not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court."

25

*Id.* at 529–30.  Thus, we modify the trial court's judgment to reflect a plea of "not guilty" under "<u>Plea to Offense</u>" in the summary portion of the judgment.

**CONCLUSION**

As modified, the trial court's judgment is affirmed.


            Alex Yarbrough
               Justice


Do not publish.